IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 5:16-cv-01354-C |
| | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | Judge Robin J. Cauthron |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **DEFENDANTS' BRIEF AND EXHIBITS IN SUPPORT OF**
## **THEIR MOTION TO DISMISS**

JEFFREY H. WOOD
Acting Assistant Attorney General

DEDRA S. CURTEMAN
STEPHEN FINN
ANTHONY P. HOANG
United States Department of Justice
Environment Division
Washington, D.C.  20044-7611

Attorneys for Defendants

OF COUNSEL:

KENNETH DALTON
DONDRAE MAIDEN
SHANI WALKER
JOSH EDELSTEIN
United States Department of the Interior
Washington, D.C.  20240

THOMAS KEARNS
United States Department of the Treasury
Washington, D.C.  20227

# Table of Contents

I.   INTRODUCTION...................................................................................................i

II.  RELEVANT FACTUAL AND LITIGATION BACKGROUND .............................2

III. RELEVANT STATUTORY FRAMEWORK........................................................3

   A.  The Indian Claims Commission Act .........................................................3

   B.  25 U.S.C. §§ 162a, 4011, and 4044..........................................................5

IV.  APPLICABLE STANDARD OF REVIEW ..........................................................7

V.   ARGUMENT ....................................................................................................8

   A.  The United States Has Not Waived Its Sovereign Immunity to the Claims Asserted by Cherokee in Counts I, II, and III.....................................................................10

     1.  The statutes cited by Cherokee do not waive the United States' sovereign immunity to Cherokee's claims. ..................................................................10

     2.  The general jurisdictional statutes and the Interior Department Appropriations Acts do not waive the United States' sovereign immunity to Cherokee's claims.....12

   B.  Cherokee's Invocation of APA Jurisdiction is Fatally Flawed. .............................15

     1.  Cherokee does not meet the requirement under Section 702 that a cause of action be founded "within the meaning of a relevant statute." ..................................15

     2.  Cherokee does not meet the requirement under Section 702 that a cause of action be founded on "final agency action." ...........................................................18

     3.  Cherokee is not an "aggrieved" party under Section 702...............................21

       a.   The Secretary of the Interior has complied with the requirements of Section 4011 of the Trust Fund Management Reform Act.           21

       b.   The Secretary of the Interior has complied with the requirements of Section 4044 of the Trust Fund Management Reform Act.           23

     4.  Cherokee does not meet the requirements of Section 706. .............................24

   C.  Cherokee's Claims for Trust Funds Restoration and Other Types of Monetary Relief in Counts II and III are Impermissible. ................................................................28

D.   Portions of Cherokee's Claims in Counts I, II, and III Are Extinguished by the ICCA or Barred by the Statute of Limitations. ............................................................ 30

1.   Portions of Cherokee's claims are extinguished by Section 12 of the ICCA.  30

2.   Portions of Cherokee's claims are barred by the six-year statute of limitations.. .................................................................................................................. 32

a.   Cherokee's claims regarding its trust account reconciliation report, if any, are barred.                                                                      32

b.   Cherokee's claims pre-dating November 28, 2010, are time-barred. 33

E.   Cherokee's Claims for Non-Monetary Resource Accounting in Counts II and III are Unfounded. ............................................................................................................. 35

VI.  CONCLUSION ......................................................................................................... 36

## Cases

*Alexander v. Sandoval,* 532 U.S. 275 (2001) ................................................................ 35

*Am. Fed. of Gov't Emps., AFL–CIO v. Rumsfeld,* 321 F.3d 139 (D.C. Cir. 2003)........... 18

*Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818 (10th Cir. 1981)............................ 30

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)....................................................................... 8, 36

*Ass'n of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150 (1970) ............................ 17

*Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519 (1983) .............. 17

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)........................................................ 8, 36

*Biodiversity Conservation Alliance v. Jiron,* 762 F.3d 1036 (10th Cir. 2014) ................ 18

*Buffalo Cent. Terminal v. United States,* 886 F. Supp. 1031 (W.D.N.Y.1995) ............... 18

*Califano v. Sanders,* 430 U.S. 99, (1977)..................................................................... 16

*City of Albuquerque v. U.S. Dep't of Interior,* 379 F.3d 901 (10th Cir. 2004) ............... 18

*Colorado Dep't of Highways v. U.S. Dep't of Transp.,* 840 F.2d 753 (10th Cir. 1988) ... 29

*Dutcher v. Matheson ("Dutcher I"),* 733 F.3d 980 (10th Cir. 2013)................................. 7

*Dutcher v. Matheson,* 840 F.3d 1183 (10th Cir. 2016) .................................................... 7

*Firstenberg v. City of Santa Fe, N.M.,* 696 F.3d 1018 (10th Cir. 2012) ............................ 7

*Fletcher v. United States,* 730 F.3d 1206 (10th Cir. 2013) ............................................. 14

*Flute v. U.S.,* 808 F.3d 1234 (10th Cir. 2015)..........................................................passim

*Fund for Animals, Inc. v. BLM,* 460 F.3d 13 (D.C. Cir. 2006) ....................................... 28

*Gunn v. Minton,* —— U.S. ——, 133 S.Ct. 1059 (2013) .................................................... 7

*Housing Authority of City of Picher, Okl. v. U.S. ex rel. Sec'y, Dept. of Housing and
    Urban Development,* No. 14-0322, 2015 WL 1321706 (N.D. Okl. March 24, 2015) .. 30

*Iowa Tribe of Kansas & Nebraska v. Salazar,* 607 F.3d 1225 (10th Cir. 2010).............. 19

*Kansas Cmty. Action Program Inc. v. Sec'y of Agric.,* 967 F.2d 1452 (10th Cir. 1992) .. 29

*Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012)............................................. 8

*Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375 (1994) ............................................... 7

*Lexmark International Inc. v. Static Control Components Inc.,* 134 S.Ct. 1377 (2014)... 17

*Long Term Care Pharmacy Alliance v. Leavitt,* 530 F. Supp. 2d 173 (D. D.C. 2008) ..... 28

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)...................................................passim

*McClelland v. Watling Ladder Co.,* 729 F.Supp. 1316 (W.D. Okla. 1990)........................ 2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jacks,* 960 F.2d 911 (10th Cir. 1992) .... 10

*National Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S. 479 (1998) .... 17

*Natural Res. Def. Council v. U.S. Forest Serv.,* 421 F.3d 797 (9th Cir. 2005) ................ 15

*Navajo Tribe of Indians v. New Mexico,* 809 F.2d 1455 (10th Cir. 1987)................. 31, 32

*New Mexico v. Regan,* 745 F.2d 1318 (10th Cir. 1984) .................................................. 29

*Normandy Apartments, Ltd. v. United States Dep't of Hous. & Urban Dev.,* 554 F.3d
    1290 (10th Cir. 2009)........................................................................................ 11, 13

*Norton v. S. Utah Wilderness Alliance ("SUWA"),* 542 U.S. 55 (2004) ........ 19, 25, 26, 27

*Oglala Sioux Tribe of Pine Ridge Indian Reservation v. United States Corps of Eng'rs,*
    570 F.3d 327 (D.C. Cir. 2009) ......................................................................... 31, 32

*Otoe-Missouria Tribe of Indians v. Kempthorne,* No. 06-1436-C, 2008 WL 5205191 (W.
    Dist. Okla. December 10, 2008) ............................................................................ 35

*Ponca v. Cont'l Carbon Co.,* 2006 WL 2850482 (W.D. Okla. 2006) ................................ 2
*Pueblo of Jemez v. United States,* 790 F.3d 1143 (10th Cir. 2015) ........................... passim
*Pytlik v. Prof'l Res., Ltd.,* 887 F.2d 1371 (10th Cir. 1989) .................................................. 2
*Rogers v. Ink,* 766 F.2d 430 (10th Cir. 1985) ...................................................................... 29
*San Luis Unit Food Producers v. United States,* 709 F.3d 798 (9th Cir. 2013) ............... 19
*Shoshone Indian Tribe of Wind River Reservation v. United States,* 364 F.3d 1339 (Fed. Cir. 2004) ................................................................................................................... 36
*Smithsfork Grazing Ass'n v. Salazar,* 564 F.3d 1210 (10th Cir. 2009) .............................. 15
*SUWA,* 301 F.3d 1217 (10th Cir. 2002) ............................................................................. 26
*U.S. v. Nordic Village,* 503 U.S. 30 (1992) ....................................................................... 11
*United States v. Murdock Mach. & Eng'g Co. of Utah,* 81 F.3d 922 (10th Cir. 1996) .... 11, 14
*United States v. Testan,* 424 U.S. 392 (1976) .................................................................... 11
*Wyoming v. U.S.*, 279 F.3d 1214 (10th Cir. 2002) ............................................................. 16

**Statutes**

25 U.S.C. § 162a ............................................................................................................... 5, 33
25 U.S.C. § 4011 .......................................................................................................... 6, 22, 33
25 U.S.C. § 4044 ................................................................................................... 7, 23, 33, 35
28 U.S.C. § 2401 ............................................................................................................... 9, 34
31 U.S.C. § 1301 ................................................................................................................... 15
43 U.S.C. § 178 .................................................................................................................... 26
5 U.S.C. § 551 ....................................................................................................................... 19
5 U.S.C. § 702 ......................................................................................................... 8, 16, 19
ICCA § 2, Pub. L. No. 79-726, 60 Stat. 1050 ............................................................. 2, 4, 31
ICCA § 12, Pub. L. No. 79-726, 60 Stat. 1052 ......................................................... 4, 30, 31
Pub L. No. 107-63, 115 Stat. 414 (2001) ........................................................................... 14
Pub. L. 102-381, 106 Stat. 1374 (1992) ............................................................................. 14
Pub. L. No. 102-154, 105 Stat. 990 (1991) ................................................................... 14, 34
Pub. L. No. 103-138, 107 Stat. 1379 (1993) ................................................................. 14, 34
Pub. L. No. 103-332, 108 Stat. 2499 (1994) ................................................................. 2, 14
Pub. L. No. 104-134, 110 Stat. 1321 (1996) ...................................................................... 14
Pub. L. No. 104-208, 110 Stat. 3009 (1996) ...................................................................... 14
Pub. L. No. 105-277, 112 Stat. 2681 (1998) ...................................................................... 14
Pub. L. No. 105-83, 111 Stat. 1543 (1997) ........................................................................ 14
Pub. L. No. 106-113, 113 Stat. 1501 (1999) ...................................................................... 14
Pub. L. No. 106-291, 114 Stat. 922 (2000) ........................................................................ 14
Pub. L. No. 107-153, 116 Stat. 79 (2002) .......................................................................... 33
Pub. L. No. 108-108, 117 Stat. 1241 (2003) ...................................................................... 14
Pub. L. No. 108-447, 118 Stat. 2809 (2004) ...................................................................... 14
Pub. L. No. 108-7, 117 Stat. 11 (2003) .............................................................................. 14
Pub. L. No. 109-158, 119 Stat. 1954 (2005) ...................................................................... 33
Pub. L. No. 109-54, 119 Stat. 499 (2005) .......................................................................... 14

Pub. L. No. 110-161, 121 Stat. 1844 (2007) .................................................................. 14
Pub. L. No. 111-88, Tit. I, 123 Stat. 2904 (2009) ................................................ 13, 14, 36
Pub. L. No. 114-113, 129 Stat. 2242 ............................................................................. 34

**Regulations**
25 CFR § 115.801 ........................................................................................................... 22
25 CFR § 115.803 ........................................................................................................... 22

**Federal Rules of Civil Procedure**
Fed. R. Civ. P. 8(a)(1) .................................................................................................... 18
Fed. R. Civ. P. 12(a)(1) .................................................................................................... 7
Fed. R. Civ. P. 12(b)(1) .................................................................................................... 8

**Congressional Documents**
H.R. REP. 103-778 (1994) ............................................................................................. 32
U.S. Indian Claims Commission Final Report H.R. Rep. 93-393, (Jan. 3, 1980) ....... 3, 4, 5

**Agency Documents**
Attorney General's Manual on the Administrative Procedures Act 108 (1947) .............. 25

## I.    INTRODUCTION

In this case, Plaintiff Cherokee Nation ("Cherokee" or "the Nation") claims that Defendants have failed to provide a historical accounting of Cherokee's trust funds and non-monetary trust resources, as required by various treaties and applicable law.   ECF No. 1, Complaint ("Compl.,"),  ¶¶  126-162.    Additionally, Cherokee claims that Defendants have failed to manage properly Cherokee's trust funds and non-monetary trust resources.   *Id.* at 138-162.   Cherokee invokes this Court's jurisdiction under various statutes, including the Administrative Procedure Act ("APA"), and as relief it requests declaratory and injunctive relief, including "as full and complete accounting as possible of the Nation's funds, assets[,] and natural resources to the earliest possible date"; certain administrative actions regarding the Nation's trust funds; "appropriate" management of the Nation's non-monetary trust resources; and restoration of any "Cherokee Trust Funds for which the United States cannot account."   *Id.* at ¶¶ 90-91, 150-162.

As explained below, Cherokee's claims are legally baseless.   The United States has not expressly or unequivocally waived its sovereign immunity to Cherokee's claims asserted in this case.   To the extent that Cherokee invokes APA jurisdiction, Cherokee has not met the requirements for such jurisdiction.   Additionally, this Court lacks jurisdiction over Cherokee's claims regarding the restoration of any "Cherokee Trust Funds for which the United States cannot account" and programmatic administrative actions.   Further, significant portions of Cherokee's claims have been extinguished by the Indian Claims Commission Act ("ICCA") and barred by the six-year statute of

-1-

limitations.   Accordingly, the Court should grant Defendants' motion and dismiss this case in the entirety under Rule 12 of the Federal Rules of Civil Procedure.

## II.   RELEVANT FACTUAL AND LITIGATION BACKGROUND

Cherokee alleges[1] that it is a federally recognized tribe and one of the Five Civilized Tribes and that it has trust or restricted lands in northeastern Oklahoma. Compl., ¶¶ 6-8.  Cherokee cites some 24 treaties that it has executed with the United States, during the period from November 28, 1785, to April 27, 1868.  *Id.* at ¶¶ 8-38, 40-47.  Cherokee alleges that these treaties provided for, among other things, the cession of certain lands, the investment of certain funds, and the payment of investment interest, relating to Cherokee.  *Id.* at ¶¶ 18, 42, 43, 47.  Additionally, Cherokee cites numerous Acts of Congress regarding the management of Cherokee's trust funds, including the ICCA, 60 Stat. 1049, and the American Indian Trust Fund Management Reform Act of 1994 ("Trust Fund Management Reform Act"), 108 Stat. 4239.  *Id.* at ¶¶ 49-87.  Further, Cherokee alleges that it has been party to numerous lawsuits against the United States, before and after the passage of the ICCA.  *Id.* at ¶¶ 88-89.

Cherokee filed this case on November 28, 2016.  In its Complaint, Cherokee makes numerous broad and vague allegations that the Departments of the Interior and the Treasury ("Interior" and "Treasury," respectively) have failed to provide the "full and complete" historical trust accounting allegedly required by various treaties and federal

---

[1]    For purposes of this Rule 12 motion, Cherokee's factual allegations are assumed to be true, unless there is evidence to the contrary.  *See, e.g., Pytlik v. Prof'l Res., Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989); *McClelland v. Watling Ladder Co.,* 729 F.Supp. 1316, 1318 (W.D. Okla. 1990); *Ponca v. Cont'l Carbon Co.,* 2006 WL 2850482, *2 (W.D. Okla. 2006).

statutes, including 25 U.S.C. §§ 162a, 4011, and 4044. *Id*. at ¶¶ 126-136. As relief, Cherokee requests that this Court "compel the United States to provide an accounting for all elements of the Trust Funds that are held or have been held by the United States qua trustee for the Nation," and that the Court mandate the restoration of any Cherokee trust funds "for which [Defendants] cannot account," "adequate" systems and controls for the accounting of Cherokee's trust funds, receipts, and disbursements, a determination of cash balances and a daily balance of Cherokee's accounts, periodic reconciliations and reports of the performance of Cherokee's accounts, "appropriate" management of Cherokee's natural resources, and the institution of written policies and procedures for trust management, as well as "adequate" staffing for trust fund management and the accounting of Cherokee's accounts. *Id*. at ¶¶ 132, 149, 162.

## III.   RELEVANT STATUTORY FRAMEWORK

### A.   The Indian Claims Commission Act

From approximately 1846-1868, Indian tribes sought compensation for land cessions from the United States during a time known as the "treaty-making period," when Indian tribes negotiated approximately 370 treaties and negotiated away nearly two billion acres of North America, "leaving themselves 140 million acres at the end of that period in 1868." U.S. Indian Claims Commission Final Report 1-2, H.R. Rep. 93-393, at 1 (Jan. 3, 1980). In 1881, Congress began enacting special bills to give tribes access to the Court of Claims. *Id.* In a series of acts after World War I, Congress removed many of the barriers preventing Indian tribes from litigating their claims and, among other things, waived sovereign immunity and allowed tribes to bring claims against the United

States. These acts led to an "explosion of claims to redress old injustices." *Id.* at 3.

Between 1924 and 1927, tribes and individuals filed 37 cases in the Court of Claims, and

by 1946, almost 200 claims were pending before the court. *Id.*  While most of the claims

were dismissed on procedural grounds, the need and urgency for a new procedure to

address the numerous Indian "breach of trust" claims.   "The result of the almost

unanimous dissatisfaction [with the prior process for addressing the claims] was the

establishment of a special commission to handle exclusively Indian cases under a broad

new jurisdiction and with the firmly expressed goal of finality." *Id.*  The ICCA, passed

on August 13, 1946, created an independent tribunal—the Indian Claims Commission

("ICC")—and endowed it with broad jurisdiction to adjudicate claims by tribes or groups

of Indians against the United States, arising under the Constitution, laws, treaties, and

Executive Orders; under law and equity, including those sounding in tort; and on grounds

of fraud, duress, unconscionable consideration, and mutual or unilateral mistake.  ICCA §

2, Pub. L. No. 79-726, 60 Stat. 1050.  The ICCA stated in pertinent part:

> SEC. 12. The Commission shall receive claims for a period of five years
> after the date of approval of this Act and no claim existing before such date
> but not presented within such period may thereafter be submitted to any
> court or administrative agency for consideration, nor will such claim
> thereafter be entertained by the Congress.

ICCA § 12, Pub. L. No. 79-726, 60 Stat. 1052.

By August 13, 1951, "[a]lmost all the 176 known tribes or bands filed one or more

claims on old grievances."  U.S. Indian Claims Commission Final Report 1-2, H.R. Rep.

93-393, at 5, 7-8, 12 (Jan. 3, 1980).   The tribal claims consisted of 370 petitions

(including those involving Cherokee), which the ICC divided into 617 dockets (including the 12 dockets (Nos. 2, 3, 5, 24, 41-43, 173, 173-A, 190, 271, and 297) involving Cherokee).   The claims primarily involved allegations that the tribes' lands were undervalued upon transfer to the United States by treaty.  *Id*. at 6.  In those instances in which tribes requested accountings, the United States provided accountings regarding "any funds belonging to Indians, how they came into being, how they were expended, and what balances were held in the United States Treasury."  *Id*. at 8.  The accounting work that started in 1946 was completed in 1971.  *Id*. at 18.

Congress extended the work of the ICC five times.  *Id*. at 12, 17.  Upon concluding its operation on January 1, 1978, the ICC stated, "The last question that needs an answer is did the Indians gain 'their day in court?' The answer is yes."  *Id*. at 21.

### B.      25 U.S.C. §§ 162a, 4011, and 4044

Under 25 U.S.C. § 162a, the Secretary of the Interior has the discretion to withdraw tribal trust funds from the Treasury and invest them under certain conditions. 25 U.S.C. § 162a(a)-(c).  Additionally, the Secretary has to provide "adequate systems for accounting for and reporting trust fund balances," to determine "accurate cash balances," and to provide "periodic, timely reconciliations to assure the accuracy of accounts."  25 U.S.C. § 162a(d)(1), -(4), -(5).

Under Section 4011 of the Trust Fund Management Reform Act, the Secretary of the Interior has the responsibility to account for the Indian trust funds on a prospective basis, which includes the obligation to account "for the daily and annual balance of all

funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title," to be provided in the form of a "statement of performance [also known as "a periodic statement of performance"] to each Indian tribe and individual with respect to whom funds are deposited or invested pursuant to section 162a of this title."  25 U.S.C. § 4011(a)-(b). The periodic statement of performance for each period is required to contain "(1) the source, type, and status of the funds; (2) the beginning balance; (3) the gains and losses; (4) receipts and disbursements; and (5) the ending balance."  *Id*.  Additionally, the Secretary has to conduct an annual audit "of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title."  25 U.S.C. § 4011(c).

Section 4044 of the Trust Fund Management Reform Act, which applies only to tribes, requires the Secretary of the Interior to provide "trust reconciliation reports" to Congress, by a date certain, which identify "for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995, and which include

(1)     a description of the Secretary's methodology in reconciling trust fund accounts;

(2)     an "attestation by each account holder that –

(A) the Secretary has provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date, and that the account holder accepts the balance as reconciled by the Secretary; or

-6-

(B) the account holder disputes the balance of the account holder's account as reconciled by the Secretary and statement explaining why the account holder disputes the Secretary's reconciled balance; and

(C) a statement by the Secretary with regard to each account balance disputed by the account holder outlining efforts the Secretary will undertake to resolve the dispute.

25 U.S.C. § 4044.

## IV.    APPLICABLE STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") requires this Court's determination that Cherokee has met its burden of showing that the Court has jurisdiction over Cherokee's claims. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). That is because "[f]ederal courts are courts of limited jurisdiction" and "must have a statutory basis for their jurisdiction." *Dutcher v. Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Dutcher v. Matheson* ("*Dutcher I*"), 733 F.3d 980, 984 (10th Cir. 2013)). "We must presume no jurisdiction exists[,] absent an adequate showing by the party invoking federal jurisdiction that jurisdiction exists; that showing must be made by a preponderance of the evidence." *Id.* (internal quotation marks omitted). Federal courts are vested with only the jurisdiction that is authorized by the Constitution and statute. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (quoting *Gunn v. Minton,* —— U.S. ——, 133 S.Ct. 1059, 1064 (2013)). "'[F]ederal subject matter jurisdiction is elemental . . . and its presence must be established in every cause under review in the federal courts.'" *Id.* at 1151 (quoting *Firstenberg v. City of Santa Fe, N.M.,* 696 F.3d 1018, 1022 (10th Cir. 2012)).

Fed. R. Civ. P. 12(b)(6) requires Cherokee to plead facts that support its claims for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").   In order to survive a motion to dismiss, "'[a] plaintiff must nudge [his] claims across the line from conceivable to plausible.'" *Pueblo of Jemez*, 790 F.3d at 1171 (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (alteration in original)).   Thus Cherokee's obligation in this case is to provide more than conclusory statements and labels; rather, the Nation is required to provide the grounds of entitlement for relief. *See Twombly*, 550 U.S. at 555-56 (stating "a formulaic recitation of the elements of a cause of action will not do"; "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

## V.   ARGUMENT

In this case, Cherokee claims that Defendants have never furnished Cherokee with a "full and complete" historical accounting of Cherokee's trust funds and non-monetary trust resources, as required by various treaties and applicable law.   ECF No. 1, Compl., pp. 40-46.   In Counts I, II, and III of its Complaint, Cherokee alleges the legal bases for its claims: (1) "treaty, other agreements, or by congressional or administrative action . . . to provide an accounting of the Trust Funds held or managed by the United States, or which have otherwise been subject to the United States' trusteeship"; (2) 25 U.S.C. §§ 162 and 4011; and (3) 5 U.S.C. § 702.   As relief, Cherokee requests an order mandating

the preparation of a "full and complete" trust accounting, the restoration of any "Cherokee Trust Funds for which the United States cannot account," and a host of administrative measures relating to the provision of certain trust account data to Cherokee and the management of Cherokee's trust accounts and non-monetary trust resources.

None of Cherokee's claims and requests for relief has merit.  Cherokee's trust accounting claim pursuant to "treaty, other agreements, or by congressional or administrative action [regarding] the Trust Funds held or managed by the United States, or which have otherwise been subject to the United States' trusteeship" in Count I fails because the United States has not waived its sovereign immunity to such a claim.  Cherokee's trust accounting claim under 25 U.S.C. §§ 162 and 4011 in Count II fails because the United States has not waived its sovereign immunity to such a claim and in any event Defendants have complied with the requirements of the law.  Cherokee's trust accounting claim under the APA in Count III fails because Cherokee does not and cannot meet the requirements for such jurisdiction.  Additionally, Cherokee's trust accounting claim relating to the period pre-dating August 13, 1946, has been extinguished by the ICCA, while Cherokee's trust accounting claim relating to the period pre-dating November 28, 2010, is barred by the six-year statute of limitations, 28 U.S.C. § 2401. Further, this Court cannot grant relief regarding Cherokee's request for restoration of any "Cherokee Trust Funds for which the United States cannot account" because the request is essentially one for monetary damages potentially exceeding $10,000 and if so is outside of the Court's jurisdiction.  Similarly, the Court cannot grant relief relating to

Cherokee's requests regarding the management of Cherokee's trust accounts and non-monetary trust resources because Cherokee lacks the requisite standing to assert such programmatic challenges.  Accordingly, this Court should grant Defendants' motion and dismiss this case in the entirety.

> **A.     The United States Has Not Waived Its Sovereign Immunity to the Claims Asserted by Cherokee in Counts I, II, and III.**

> **1.     The statutes cited by Cherokee do not waive the United States' sovereign immunity to Cherokee's claims.**

Cherokee alleges that this Court has jurisdiction to hear its claims in Counts I, II, and III of the Complaint, under the following statutes:  the Act of March 3, 1919, 40 Stat. 1316 (1919); the Act of March 19, 1924, 43 Stat. 27 (1924); and the Act of April 25, 1932, 47 Stat. 137 (1932).  Compl., ¶¶ 79, 80, 81.  Cherokee's allegation lacks merit. The cited statutes do not expressly and unequivocally waive the United States' sovereign immunity regarding the claims set forth in this case, and therefore they cannot serve as a legitimate basis for jurisdiction herein.   Absent such a clear and definitive waiver of sovereign immunity, the government is immune from suit.

"The concept of sovereign immunity means that the United States cannot be sued without its consent."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jacks,* 960 F.2d 911, 913 (10th Cir. 1992).  A party seeking to assert a valid waiver of sovereign immunity may not rely on a general jurisdictional statute alone, but instead must "'assert a claim against the government under such a statute must also point to a specific waiver of immunity in order to establish jurisdiction.'"  *Pueblo of Jemez*, 790 F.3d at 1151 (quoting

*Normandy Apartments, Ltd. v. United States Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1294 (10th Cir. 2009)).  The United States Court of Appeals for the Tenth Circuit recently affirmed again that "[t]he United States and its officers enjoy immunity from suit except in instances where the United States has expressly waived that protection." *Flute v. U.S.*, 808 F.3d 1234, 1239  (10th Cir. 2015), *cert. denied* 137 S.Ct. 146 (2016) (citing *United States v. Testan,* 424 U.S. 392, 399 (1976) ("It long has been established [ ] that the United States, as sovereign, is immune from suit save as it consents to be sued . . . ." (internal quotation marks omitted)); *see also U.S. v. Nordic Village*, 503 U.S. 30, 33 (1992); *United States v. Murdock Mach. & Eng'g Co. of Utah,* 81 F.3d 922, 929–30 (10th Cir. 1996).  "And because '[t]his immunity extends to injunctive relief,' it bars the relief sought by Plaintiffs here—an order directing the government to provide an accounting." *Id*. (citing *Murdock Mach.,* 81 F.3d at 921).  The Tenth Circuit concluded, "[t]hus, if the government has not consented to suit, the courts have no jurisdiction to either restrain the government from acting or to compel it to act." *Id.* (internal quotation marks omitted)).

In this case, Cherokee does not and cannot point to any express waivers of the United States' sovereign immunity to Cherokee's claims asserted in Counts I, II, and III of the Complaint.  The statutes cited by Cherokee—the Act of March 3, 1919; the Act of March 19, 1924; and the Act of April 25, 1932—provide no such waiver.  Rather, the March 1919 act conferred jurisdiction upon the Court of Claims for the determination of interest owed to Cherokee under a May 18, 1905 judgment, while the March 1924 act conferred jurisdiction upon the Court of Claims for any legal or equitable remedy that

-11-

Cherokee lodged against the United States for a period of five years from the passage of the act, and the April 1932 act conferred jurisdiction upon the Court of Claims for any legal or equitable remedy that Cherokee lodged against the United States, notwithstanding any applicable statute of limitations, for a period of six months from the passage of the act. Without the requisite waiver, Cherokee cannot bring or maintain this case against Defendants. Accordingly, this Court should dismiss this case.

> **2. The general jurisdictional statutes and the Interior Department Appropriations Acts do not waive the United States' sovereign immunity to Cherokee's claims.**

Cherokee alleges that this Court has jurisdiction under 28 U.S.C. §§ 1331, 1361, 1362, 2201, and 2202, in relevant part. Compl., ¶ 90. Further, Cherokee alleges that, through a "series of appropriations acts," Congress waived the United States' sovereign immunity to suit. *Id.*, ¶ 91. Cherokee's allegations are baseless and should be rejected.

The general jurisdictional statutes cited by Cherokee—28 U.S.C. §§ 1331, 1361, 1362, 2201, and 2202—simply confer jurisdiction upon federal courts to adjudicate civil claims so long as no other jurisdictional bar prohibits such claims. The statutes, in and of themselves, make no mention of sovereign immunity, let alone furnish the express waiver that Cherokee requires to bring and maintain this case. *Pueblo of Jemez*, 790 F.3d at 1151 ("'[b]ecause general jurisdictional statutes, such as 28 U.S.C. § 1331, do not waive the Government's sovereign immunity, a party seeking to assert a claim against the government under such a statute must also point to a specific waiver of immunity in order to establish jurisdiction'" (quoting *Normandy Apartments*, 554 F.3d at 1295)).

-12-

Similarly, the "series of appropriations acts" cited by Cherokee, in and of itself, does not set forth the express or unequivocal waiver of sovereign immunity necessary for this case.  As stated by the Tenth Circuit in *Flute*, "[c]ontrary to Plaintiffs' position, the 2009 [Appropriations] Act—standing alone—does not waive Defendants' sovereign immunity."  808 F.3d at 1240.  In that case, the plaintiffs were descendants of the victims of the 1864 Sand Creek Massacre who sought an accounting of the funds that the United States allegedly held in trust as payment of reparations to their ancestors.  *Id.* at 1234.  The plaintiffs alleged, as a jurisdictional basis for their accounting claim, that the Interior Department appropriations acts had waived the United States' sovereign immunity to the plaintiffs' claims.  *Id.* at 1240.  Upon the government's motion, the district court dismissed the case for lack of subject matter jurisdiction.  On appeal, the Tenth Circuit examined the relevant language from the 2009 Interior Department appropriations act (which is the same as or virtually identical to those cited by Cherokee herein):

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation ending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Pub. L. No. 111-88, Tit. I, 123 Stat. 2904, 2922 (2009).

Based on its examination, the Tenth Circuit ruled that the text of the 2009 appropriations act did not address sovereign immunity and thus could not represent an express or unequivocal waiver of the United States' sovereign immunity.  *Id.* (citing *Murdock Mach.*, 81 F.3d at 930).  At most, the Tenth Circuit stated, the 2009

appropriations act tolled the passage of time under any applicable statute of limitations for claims "concerning losses to or mismanagement of trust funds," and while "[t]he statute provided that a plaintiff's claim will not expire by the mere passage of time, . . . it does nothing to relieve a plaintiff of the independent obligation to identify an express waiver of sovereign immunity in order to maintain an action against the government." *Id*. (quoting 123 Stat. at 2922 and citing *Fletcher*, 730 F.3d at 1211 and n. 2 (indicating that parties bringing a claim for an accounting of Indian trust funds must identify a waiver of sovereign immunity)).

As noted above, Cherokee relies in this case on the same 2009 Interior Department appropriations act that the Tenth Circuit examined in *Flute*, 808 F.3d at 1240, as well as numerous other Interior Department appropriations acts between 1991 and 2007 that contain language identical or substantially similar in the language to the 2009 act.[2] Compl., fn 3.  Cherokee's reliance is misplaced.  While the cited appropriations acts between 1991 and 2009 toll the statute of limitations pertaining to "any claim concerning losses to or mismanagement of trust funds," the acts are not independent bases for the

---

[2]     Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. 102-381, 106 Stat. 1374 (1992); Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994); Pub. L. No. 104-134, 110 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996); Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No. 106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000); Pub L. No. 107-63, 115 Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005); Pub. L. No. 110-161, 121 Stat. 1844 (2007); Pub. L. No. 111-88, 123 Stat. 904 (2009).  Compl., fn 3.

waiver of sovereign immunity.[3]   Cherokee has not identified and cannot identify "a statute other than the Appropriations Acts that expressly waives sovereign immunity with respect to their claims." *Flute*, 808 F.3d at 1241.

Given Cherokee's inability to rely on the general jurisdictional statutes and the Interior Department appropriations acts and thereby demonstrate that the United States has clearly and definitively waived its sovereign immunity in this case, this Court should grant Defendants' motion and dismiss this case in the entirety.

**B.      Cherokee's Invocation of APA Jurisdiction is Fatally Flawed.**

**1.      Cherokee does not meet the requirement under Section 702 that a cause of action be founded "within the meaning of a relevant statute."**

In Count III of its Complaint, Cherokee alleges that, under Section 702 of the APA, this Court has jurisdiction over its trust accounting claims "[b]ecause the United

---

[3]      Assuming *arguendo* that the 1991-2009 Interior Department appropriations acts could somehow waive the United States' sovereign immunity to Cherokee's trust accounting claims, as Cherokee alleges, such waivers would be unavailing for Cherokee in this case.  The 1991-2009 appropriations acts do not and cannot apply as substantive law some eight to 26 years after their passage.  *See, e.g., Smithsfork Grazing Ass'n v. Salazar,* 564 F.3d 1210, 1216 (10th Cir. 2009) ("Federal law mandates that "an appropriation in a regular, annual appropriation law may be construed to be permanent or available continuously only if the appropriation … expressly provides that it is available after the fiscal year covered by the law in which it appears.") (quoting 31 U.S.C. § 1301 and citing *Natural Res. Def. Council v. U.S. Forest Serv.,* 421 F.3d 797, 806 n.19 (9th Cir. 2005) ("[A]ppropriations acts are generally in force during the fiscal year of the appropriation and do not work a permanent change in the substantive law.").)  Starting in fiscal year 2016 (which began on October 1, 2015), the Interior Department appropriations act omitted the language relied upon by Cherokee in bringing this case. Cherokee did not bring this case until November 28, 2016.  Thus Cherokee cannot claim any alleged benefits of such unfounded statutory construction.

States breached any and each of these duties set out herein as well as other obligations specifically set forth in treaties, other statutes, regulations, and orders." Compl., ¶ 160. Even though Cherokee does not set forth any specific relevant statutes to support the alleged duties, *id.*, ¶¶ 151-159, Cherokee essentially has pled an claim under Section 702 of the APA that is, in part, without statutory basis, by framing its trust accounting claims in Count III as applying to "these duties *as well as* other obligations" found in treaties, statutes, regulations, or orders.  Similarly, Cherokee's claims based on "regulations and orders" lack statutory foundation.  Thus, Cherokee fails to show that its interests are within the zone protected by the APA.

"The APA . . . is not an independent grant of jurisdiction to review agency action." *Wyoming v. U.S.*, 279 F.3d 1214, 1236 (10th Cir. 2002) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977), and looking to National Wildlife Refuge System Administration Act to determine jurisdiction).  Under Section 702 of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action *within the meaning of a relevant statute*, is entitled to judicial review thereof."  5 U.S.C. § 702 (emphasis added).  A party bringing a claim under this provision and asserting that it is "adversely affected or aggrieved by agency action within the meaning of a relevant statute" has to demonstrate that its interest in the litigation falls "arguably within the zone of interests to be protected or regulated by the statute . . . in question."  *National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998) (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)); *see also Lujan v.*

*Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (stating "we have said that to be 'adversely affected or aggrieved ... within the meaning' of a statute, the plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint" (parentheses and emphasis in the original)).  In making a "zone of interest" determination, a court determines "the scope of private remedy" created by Congress and the "class of persons" who may maintain a claim under a statue using traditional tools of statutory interpretation.  *Lexmark International Inc. v. Static Control Components Inc.*, 134 S.Ct. 1377, 1386-87 (2014) (discussing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 529 (1983)).

In Count III of its Complaint, Cherokee fails to meet the requirements for invoking jurisdiction under Section 702 of the APA regarding alleged breaches of "any and each of these duties set out herein as well as other obligations specifically set forth in treaties, other statutes, regulations, and orders."  By employing the phrase "as well as," Cherokee asserts that the duties listed in Count III are separate and apart from statutory and other obligations.  Further, by not citing any pertinent statutory basis for its claims or the "duties set out herein" in Count III, Cherokee makes it impossible for Defendants or this Court to conduct the statutory review and interpretation necessary to determine whether Cherokee is within the zone of interest of the relevant statute.  Cherokee's mere assertion in Count III that there are statutory obligations does not provide an adequate basis for

Defendants or the Court to evaluate Cherokee's statutory basis, if any. Cherokee's approach is legally insufficient. *See* Fed. R. Civ. P. 8(a)(1) (requiring a "short and plain statement" of the jurisdictional grounds).

As to Cherokee's claims in Count III based on "regulations and orders," Cherokee may maintain an action based on regulations and executive orders, so long as Cherokee demonstrates that it is within the zone of interest protected by such regulations or executive orders and that any regulations or executive orders so invoked must be "within the scope of authority delegated by Congress" by statute that provides Cherokee a zone of interest. *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 915 (10th Cir. 2004) (citing *Buffalo Cent. Terminal v. United States*, 886 F. Supp. 1031, 1044 (W.D.N.Y.1995) Cherokee's claims fail if they fall outside the meaning of a relevant statute. *Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036, 1058 n.25 (10th Cir. 2014) (citing *Am. Fed. of Gov't Emps., AFL–CIO v. Rumsfeld*, 321 F.3d 139, 144–45 (D.C. Cir. 2003) (noting that a challenge could not be brought "based on certain agency instructions, directions, and regulations because they did not fall within the meaning of a relevant statute")).

### 2. Cherokee does not meet the requirement under Section 702 that a cause of action be founded on "final agency action."

In Counts II and III of its Complaint, Cherokee sets out a litany of trust accounting and other administrative actions regarding the provision of information and management of its trust funds and non-monetary trust resources that Defendants allegedly fail to provide. Compl., ¶¶ 134-162. Cherokee essentially mounts a programmatic challenge to

the Interior Department's trust management system.  Cherokee's challenge is impermissible and should be rejected.

As noted above, Section 702 of the APA provides a waiver of sovereign immunity for claims in which a plaintiff has suffered "'a legal wrong because of agency action,'" *Iowa Tribe of Kansas & Nebraska v. Salazar*, 607 F.3d 1225, 1230 (10th Cir. 2010) (quoting 5 U.S.C. § 702).  To obtain judicial review under this provision, a plaintiff must (1) identify some final "agency action" to be reviewed, and (2) show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" by the action at issue.  *See Lujan*, 497 U.S. at 882–83.  The term "agency action" is defined as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  Section 702's "agency action" requirement precludes "'broad programmatic attacks' on an agency's administration of a program." *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 803 (9th Cir. 2013) (alterations omitted) (quoting *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004)).

The Supreme Court's decision in *Lujan* "announced a prohibition on programmatic challenges" of the sort that Cherokee presents herein, *i.e.*, challenges that seek "wholesale improvement" of an agency's programs by court decree, rather than through Congress or the agency itself where such changes are normally made.  As dictated by the Supreme Court, there must be "final agency action" in order for a reviewing court to conclude that there was a waiver of sovereign immunity pursuant to

Section 702 of the APA. *Lujan*, 497 U.S. at 882 ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"). In other words, the APA requires Cherokee to challenge agency action on a "case-by-case" basis, *id.* at 894, rather than pursuing "wholesale improvement of [an agency] program by court decree," *id.* at 891 (emphasis omitted).

In Counts II and III of its Complaint, Cherokee fails to identify any specific final agency action, on a case-by-case basis, for legal challenge. Rather, Cherokee asserts a general wholesale challenge to the Secretary of the Interior's system of administering and discharging Interior's trust accounting and trust management duties and responsibilities. Cherokee broadly alleges that the United States has not met a host of alleged obligations, including providing adequate controls over receipts and disbursements; providing periodic, timely reconciliations; determining accurate cash balances; preparing and supplying periodic statements of account performance; establishing consistent, written policies and procedures for trust fund management and accounting for Cherokee's accounts; providing adequate staffing, supervision, and training for trust fund management and accounting for Cherokee's accounts; and managing Cherokee's natural resources. Compl., ¶¶ 151-159. In other words, Cherokee makes a blanket challenge to the day-to-day programmatic operations of the funds and natural resources that Interior holds in trust for hundreds of federally recognized tribes (including but not limited to Cherokee) and hundreds of thousands of Indian individuals. Cherokee's approach

-20-

effectively requires this Court to review the legal adequacy of each and every accounting action or trust management decision for which the Secretary is or has been responsible. Such an approach is expressly prohibited by *Lujan*. Cherokee's claims should be dismissed.

### 3. Cherokee is not an "aggrieved" party under Section 702.

To the extent that Cherokee identifies sections 4011 and 4044 of the Trust Fund Management Reform Act, 25 U.S.C. §§ 4011 and 4044, as the bases for the discrete statutory created historical accounting duties by which Cherokee can legitimately invoke this Court's review under APA § 702, Cherokee's claims still fail because the essential factual predicate for subject matter jurisdiction does not exist. As this Court is aware, in order to obtain review under APA § 702, Cherokee must (1) identify some final "agency action" to be reviewed, and (2) show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" by the action at issue. *Lujan* at 882–83. Cherokee is not aggrieved within the meaning of sections 4011 and 4044 of the Trust Fund Management Reform Act because the Secretary has satisfied and continues to satisfy the obligations set forth therein. This Court should not countenance Cherokee's claims to the contrary.

### a. The Secretary of the Interior has complied with the requirements of Section 4011 of the Trust Fund Management Reform Act.

Under Section 4011 of the Trust Fund Management Reform Act, the Secretary of the Interior has the prospective responsibility to account "for the daily and annual balance

of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title." 25 U.S.C. § 4011(a).  To wit, the Secretary is directed to "provide a statement of performance to each Indian tribe and individual with respect to whom funds are deposited or invested pursuant to section 162a of this title in the form of a statement of performance/periodic statement of performance[.]"  25 U.S.C. § 4011(b).  The periodic statement of performance for each period is required to contain "(1) the source, type, and status of the funds; (2) the beginning balance; (3) the gains and losses; (4) receipts and disbursements; and (5) the ending balance."  *Id*.; *see also* 25 CFR §§ 115.801 and 115.803.  Also Section 4011 directs the Secretary to conduct an annual audit "of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title[.]" 25 U.S.C. § 4011(c).

Since January 1996, the Interior Department has provided Cherokee with periodic statements of Cherokee's trust accounts as required by Section 4011 of the Trust Fund Management Reform Act and 25 CFR Part 115.  *See, e.g.,* Defendants' Exhibit ("Defs. Exh.") 1.[4]  Additionally, under 25 C.F.R. § 115.802, Cherokee can contact Interior about and obtain access to its own trust account information even more frequently than the

---

[4]     The periodic statements for Cherokee's trust accounts that constitute this exhibit cover the period from March, 2002, to fiscal year 2017; they are over 21,000 pages; and, even in electronic format, they are too massive to be filed through the ECF system. Further, the periodic statements contain confidential financial data relating to Cherokee. Thus, Defendants will seek separately this Court's leave to lodge the periodic statements on disk and under seal.

provision of the periodic statements.[5]  Further, Interior has discharged its annual auditing obligations regarding all of the Indian trust funds (including but not limited to Cherokee), as required by Section 4011(c) of the Trust Fund Management Reform Act.  *See* Defs. Exh. 2.[6]

> **b.    The Secretary of the Interior has complied with the requirements of Section 4044 of the Trust Fund Management Reform Act.**

As noted above, Section 4044 of the Trust Fund Management Reform Act applies only to tribes and established a date certain for the Secretary of the Interior to provide to Congress "a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995."  25 U.S.C. § 4044.  The trust account reconciliation report is to include "(1) a description of the Secretary's methodology in reconciling trust fund accounts" and an "attestation by each account holder that either the (A) the Secretary has provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date and that the account holder accepts the balance as reconciled by the Secretary; or (B) the account holder disputes the balance of the account holder's account as reconciled by the Secretary and statement explaining why the account holder disputes the Secretary's reconciled balance; and (C) a statement by the Secretary with regard to each account

---

[5]    Cherokee has been able to obtain electronic access in real time to its trust account information since July 2000.

[6]    The audit letters that constitute this exhibit cover the period from October 1, 1995, to September 30, 2016; they are over 1,000 pages; and, even in electronic format, they are too voluminous to be filed through the ECF system.  Thus, Defendants will seek separately this Court's leave to lodge the audit letters on disk.

balance disputed by the account holder outlining efforts the Secretary will undertake to resolve the dispute." *Id*. After completing its Trust Reconciliation Project ("TRP"), Interior submitted the TRP results, which included the account reconciliation and account balance information required by Section 4044, to the tribes that had trust accounts subject to the TRP (which tribes included but were not limited to Cherokee) in January, 1996, and to Congress in May, 1996. Defs. Exh. 3. Later that year, Interior submitted to Congress the agency's proposed legislative options for resolving any trust account balance disputes arising from the TRP results. Defs. Exh. 4.

### 4.     Cherokee does not meet the requirements of Section 706.

Just as it fails to invoke properly this Court's jurisdiction under Section 702 of the APA, Cherokee cannot show that the Court has jurisdiction under Sections 706(1) and (2), over Cherokee's broad claims in Counts II and III that the United States has failed to satisfy a host of trust accounting and trust management obligations, without specifying the discrete mandatory agency action that Defendants are required to take. Compl., ¶¶ 151-162. Cherokee states only that "[t]he United States, through its agencies and sub-bureaus has acted arbitrarily, and capriciously, and such action constitutes final agency action and the withholding of agency action that is required." *Id.*. ¶ 161. As explained above, Cherokee cannot identify a statute that identifies a discrete, non-discretionary, mandatory accounting duty, and further it cannot demonstrate that Defendants have failed to carry out that duty. Thus Cherokee's claims should be dismissed.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA,* 542 U.S. at 64 (emphasis in original).  Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act."  *Id.* (quoting Attorney General's Manual on the Administrative Procedures Act 108 (1947)) (internal quotations omitted).  Section 706 does not permit Cherokee to challenge agency processes that are not "agency action."  *See Lujan*, 497 U.S. at 873 ("Absent an explicit congressional authorization to correct the administrative process on a systemic level, agency action is not ordinarily considered 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to manageable proportions, and its factual components fleshed out, by concrete action that harms or threatens to harm the complainant.").

In *SUWA*, an environmental group—Southern Utah Wilderness Alliance—sued the Bureau of Land Management ("BLM") for failing to comply with a directive in the Federal Land Policy and Management Act ("FLPMA") to manage certain public lands "in a manner so as not to impair the suitability of such areas for preservation as wilderness" (non-impairment mandate).  *SUWA*, 542 U.S at 59 (quoting 43 U.S.C. § 1782(c)).  SUWA alleged, *inter alia*, that BLM violated FLPMA's non-impairment mandate by allowing off-road vehicles to degrade lands classified as wilderness study areas which were awaiting formal wilderness designations by Congress.  *Id.* at 59. SUWA sought relief under Section 706(1) of the APA, claiming that BLM violated the non-impairment mandate and that the court should "compel agency action unlawfully

withheld or unreasonably delayed." *SUWA*, 542 U.S at 59-61.   The Tenth Circuit reversed the district court's dismissal of the case and held that the APA permitted the relief requested by SUWA.   *SUWA*, 301 F.3d 1217 (10th Cir. 2002), *rev'd*, 542 U.S. 55 (2002).

Upon certiorari, the Supreme Court unanimously rejected the Tenth Circuit's APA application for two principal reasons.  Both reasons apply fully to Cherokee's claims in this case.

First, the Court examined Section 702 of the APA, which limits judicial review to suits challenging "agency action" as defined in Section 551(13) of that statute.  *Id*. at 62. The Court emphasized that the specific categories of "agency action" given in Section 551(13) of FLPMA all "involve circumscribed, discrete agency actions."  *Id*.  SUWA had alleged that it challenged BLM's "agency action" as defined in the APA for failing to manage wilderness study areas in compliance with FLPMA's non-impairment mandate. The Court found, however, that SUWA challenged not an "agency action" but rather the continuing, day-to-day administration of wilderness study area by BLM.  The Court concluded that the APA does not allow challenges to such ongoing management activities because day-to-day management is not a "discrete agency action," as the APA defines it. *Id*. at 67.

Second, the Supreme Court held that Section 706(1) of the APA did not permit judicial relief for SUWA's non-impairment claim.  *Id*. at 64.  Under Section 706(1), courts can comply only "*discrete* agency action that [an agency] is *required to take*."  *Id*.

(emphasis in original).   Put differently, "the only agency action that can be compelled under the APA is action legally *required*."   *Id*. at 63.   (emphasis in original).   Because nothing in FLPMA's non-impairment mandate specified any particular "legally required" action, the district court had no power under the APA to compel agency action.   *Id*. at 65-66.   The Supreme Court noted that, although FLPMA's non-impairment mandate "is mandatory as to the object to be achieved . . . it leaves BLM with a great deal of discretion is deciding how to achieve it."   *Id*. at 66.

*SUWA* is directly applicable to this case.   Like SUWA, Cherokee asserts only broad and vague claims about Defendants' failures regarding an expansive array of administrative actions, without tethering any of its claims to discrete, mandatory, and non-discretionary duties delineated by specific statutes imposing a legal obligation for action by Defendants.   Cherokee's approach should be rejected.   The import of *SUWA* is that where a plaintiff, like Cherokee, is unable to demonstrate that the agency is legally required to perform an action, the plaintiff cannot obtain judicial review under the APA for broad challenges to the agency's programmatic processes that do not amount to specific agency actions (as defined by the APA).   *Long Term Care Pharmacy Alliance v. Leavitt*, 530 F. Supp. 2d 173, 185-87 (D. D.C. 2008).

Similarly, Cherokee cannot assert a single final agency action for which it can obtain judicial review under Section 706(2) of the APA.   As the Supreme Court stated in *Lujan*, "the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled."   497

U.S. at 882.  Here, instead of alleging a specific agency action, Cherokee claims that judicial review is appropriate for as-yet-unspecified agency actions, and as such, Cherokee has not met its burden to invoke judicial review under the APA.  The APA's final agency action requirement bars Cherokee from using its accounting claim as a hook for obtaining judicial review of, and a remedy for, any or all wrongs it may perceive in the United States' past actions of administering trust assets.  *See Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 20 (D.C. Cir. 2006) (rejecting a suit regarding a comprehensive agency plan because (1) that overarching agency decision was "the sum of many individual actions, including some yet to be taken," and (2) the plaintiff did not appropriately target individual agency action as the APA requires).

### C.   Cherokee's Claims for Trust Funds Restoration and Other Types of Monetary Relief in Counts II and III are Impermissible.

As noted above, Cherokee alleges in Counts II and III of the Complaint that it has "substantial interests in Trust Funds that are and have been held, and managed by the United States. . . .  [and that] [t]hese interests were obtained variously by treaty, other agreements, or by congressional action."   Compl., ¶ 148.   Cherokee claims that Defendants have failed to properly manage Cherokee's monetary and non-monetary assets and to provide a "full and complete" trust accounting.  Compl., ¶¶ 129, 136, 139-146, 151-157, 159.  As a result, Cherokee alleges that the inaction generally constitutes a breach of trust, and it requests as relief, among other things, the restoration of those of its trust funds for which the United States cannot account.  *Id.* ¶¶ 148, 149, and 162. Cherokee's claims, which presumably exceeds $10,000, are properly asserted in the

Court of Federal Claims.  Thus the claims are outside this Court's jurisdiction and should be dismissed.

As stated by the Tenth Circuit, "[a] party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief where the thrust of the suit is to obtain money from the United States.  Consequently, the Claims Court question focuses on the substance of the relief requested, rather than the language used to define it in the complaint." *Kansas Cmty. Action Program Inc. v. Sec'y of Agric.*, 967 F.2d 1452, 1455 (10th Cir. 1992); *see also Colorado Dep't of Highways v. U.S. Dep't of Transp.*, 840 F.2d 753, 755–56 (10th Cir. 1988) ("Nor may a plaintiff transform a claim for monetary relief into an equitable action simply by requesting injunctive relief that may result in the payment of money.") (citing *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985); *New Mexico v. Regan,* 745 F.2d 1318, 1322 (10th Cir. 1984) (holding that a lawsuit by a State to recover federal royalties used to pay a windfall profits tax was within the exclusive jurisdiction of the Claims Court because the State's declaratory relief request was "incidental and subordinate to the basic suit for money"); *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 823 (10th Cir. 1981) (holding jurisdiction of the Claims Court is exclusive, even when a plaintiff sought only a declaratory judgment because the actual controversy remaining after the equitable issues were settled concerned monetary relief); *Housing Authority of City of Picher, Okl. v. U.S. ex rel. Sec'y, Dept. of Housing and Urban Development*, No. 14-0322, 2015 WL 1321706, at *4 (N.D. Okl. March 24, 2015)

(holding that, where a plaintiff sought a determination of competing claims to $1.2 million, jurisdiction resided in the Court of Federal Claims).  In this case, Cherokee's claims for accounting and restoration of its trust funds are ultimately aimed at obtaining monetary relief, and, to the extent that they exceed $10,000, they are outside the jurisdiction of this Court and should be dismissed.

### D.   Portions of Cherokee's Claims in Counts I, II, and III Are Extinguished by the ICCA or Barred by the Statute of Limitations.

Cherokee fails to specify the temporal scope of its trust accounting claims in Counts I, II, and III of its Complaint.  Compl., ¶¶ 126-162.  To the extent that Cherokee seeks a "full and complete" historical trust accounting relating to its trust funds and non-monetary trust resources for periods pre-dating August 13, 1946, or November 28, 2010, the claims pre-dating August 13, 1946, are extinguished by operation of the ICCA, while the ones pre-dating November 28, 2010, are barred by the six-year statute of limitations. Thus this Court lacks jurisdiction to hear those claims and should dismiss them as a matter of law.

### 1.   Portions of Cherokee's claims are extinguished by Section 12 of the ICCA.

As noted above, before passage of the ICCA, Indian tribes did not have a formal method for resolving their claims against the United States and therefore had to obtain express congressional authorization to proceed against the government for the resolution of claims.  *See Pueblo of Jemez*, 790 F.3d at 1152 (citing *Oglala Sioux Tribe of Pine Ridge Indian Reservation v. United States Corps of Eng'rs,* 570 F.3d 327, 331 (D.C. Cir.

2009); *Navajo Tribe of Indians v. New Mexico,* 809 F.2d 1455, 1460 (10th Cir. 1987)).

"To sue the government, Indian tribes had to petition Congress 'for special jurisdictional acts authorizing the [Court of Claims] to hear their grievances against the United States; yet few of them succeeded,' and '[f]or those who did succeed, the process was costly, burdensome, and time-consuming.'" *Pueblo of Jemez*, 790 F.3d at 1152 (quoting *Navajo*, 809 F.2d at 1460). The ICCA remedied this challenge by creating the ICC to "hear and determine all tribal claims against the United States that accrued before August 13, 1946." *Id.*; *see also* ICCA § 2, 60 Stat. 1050 (1946). In keeping with the principal objective of ensuring final resolution of all historical tribal claims pre-dating the passage of the ICCA and obviating the need for tribes to lobby Congress for piecemeal resolutions, "[t]he ICCA imposed a five year statute of limitations period 'on Indian claims in law and equity then existing and arising under the Constitution, federal law, and treaties between Indian tribes and the United States,'" and it "bars claims involving allotments or other property, claims involving title, claims to equitable relief, claims for damages, and related constitutional and procedural claims *that accrued before 1946 and were not brought by August 13, 1951*." *Pueblo of Jemez*, 790 F.3d at 1152 (quoting *Oglala Sioux Tribe*, 570 F.3d at 331-332) (emphasis added); *see also* ICCA § 12. The ICC's jurisdiction was "broad enough so that no Tribe could come back to Congress ten years from now and say that it had a meritorious claim. . . ." *Navajo Tribe*, 809 F.2d at 1465.

Given the foregoing, it is clear that this Court has no jurisdiction over the portions of Cherokee's claims that pre-date August 13, 1946.  Thus, Cherokee's allegations, such those in Count I of the Complaint that "[i]n 1893, the President of the United States, by proclamation[,] took the Nation's saline deposits and sold them notwithstanding the Aug. 7, 1882 Act[, which] provided that the leasing of 'said salines shall continue' subject to express, limited provisions which were not at issue" and that "[n]o accounting for those actions nor for the moneys received have ever been provided to the Cherokee Nation," Compl., ¶ 130, should be dismissed from this case.

> **2.    Portions of Cherokee's claims are barred by the six-year statute of limitations.**

>> **a.    Cherokee's claims regarding its trust account reconciliation report, if any, are barred.**

The Trust Fund Management Reform Act resulted in part from a desire to provide historical reconciliations and prospective accounting obligations for Indian trust funds. *See* H.R. REP. 103-778 (1994) at 8-9 ("[The Act] sets out the Secretary of the Interior's responsibilities to American Indian trust fund account holders[.]").  As noted above, Congress established in relevant part a deadline for the Interior Department to transmit reports reconciling tribal trust account balances as of September 30, 1995, for each of Cherokee's trust fund accounts based upon "as full and complete accounting as possible." 25 U.S.C. § 4044.  Following the transmission of the trust account reconciliation results, the Trust Reform Act mandated that Interior "prepar[e] and supply[] account holders with periodic statements of their account performance and with balances of their account

which shall be available on a daily basis." 25 U.S.C. § 162a(d)(5); *see also* 25 U.S.C. § 4011(b). Subsequently, Interior undertook the TRP and provided the results to tribes and Congress, as directed. Cherokee received its TRP results on January 22, 1996. *See* Defs. Exh. 3.

Between 2002 and 2005, Congress tolled the statute of limitations for potential claims arising from the tribal receipt of TRP results. *See* An Act to Encourage the Negotiated Settlement of Tribal Claims, Pub. L. No. 107-153, 116 Stat. 79 (2002) (codified at 25 U.S.C. § 4044 note). The legislation deferred the deadline for tribes to "dispute[] the balance of the account holder's account as reconciled [and/or] . . . dispute[] the Secretary's reconciled balance," 25 U.S.C. § 4044(2)(B). The result of the law is that the statute of limitations for such claims ran on December 31, 2006.[7]  *See* 25 U.S.C. § 4044 note. Therefore, any claims challenging the TRP results are time-barred and should be dismissed.

### b.   Cherokee's claims pre-dating November 28, 2010, are time-barred.

Cherokee alleges that various appropriations act provisions extended the time by which Cherokee could assert its claims regarding the adequacy of its periodic statements. Compl., at ¶ 91 ("Congress . . . deferred accrual of potential claims until each Indian tribe receives a meaningful accounting."). Cherokee's allegations are unfounded.

---

[7]     Pub. L. No. 107-153 stated that the "deemed received" date was December 31, 1999, thus extending the six-year statute of limitations to December 31, 2005. On December 31, 2005, Pub. L. No. 109-158, 119 Stat. 1954 (2005), changed the "deemed received" date to December 31, 2000, thereby extending one last time the deadline for challenging the TRP results to December 31, 2006.

The annual appropriations acts cited by Cherokee have been interpreted as tolling the commencement of the statute of limitations for claims concerning losses to or mismanagement of trust *funds* (*i.e.* monies or financial assets, as opposed to tribal non-monetary trust assets, such as natural resources) until the beneficiary has been provided with "the accounting of such funds from which the beneficiary can determine whether there has been a loss." Pub. L. No. 102-154, 105 Stat. 990, 1004 (1991); *see also* Section A.2 *infra; Flute*, 808 F.3d at 1240. Congress first adopted this provision in 1990, and adopted each year thereafter through 2015, with minor changes in 1991 and 1993. Congress added "including any claim in litigation pending on the date of this Act" from 1993 through 2015. *See* Pub. L. No. 103-138, 107 Stat. 1379, 1391 (1993). For 2016, however, no such tolling provision was included as part of Interior's appropriations act. *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242, Div. G. Title I.

Since Cherokee's complaint was filed on November 28, 2016, there is no tolling available to Cherokee, and its claims are barred by the applicable six-year statute of limitation set forth in 28 U.S.C. § 2401. Without a tolling provision, the statute of limitations for Cherokee's claims ran from the date that they accrued. Here, those of Cherokee's trust fund mismanagement claims that occurred more than six years prior to filing of the complaint are untimely. Thus this Court lacks subject matter jurisdiction over any trust fund-related claims that occurred before November 28, 2010, and the Court should dismiss those claims.

### E.    Cherokee's Claims for Non-Monetary Resource Accounting in Counts II and III are Unfounded.

Even though Cherokee asserts non-monetary trust asset mismanagement claims in Counts II and III of the Complaint, Compl., ¶¶ 149(9), 158, and 162(9), Cherokee does not and cannot identify a specific statutory basis for its claims.   Federal courts cannot provide relief without a specified cause of action.   *See Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").   Thus this Court should dismiss Cherokee's claims.

In *Otoe-Missouria Tribe of Indians v. Kempthorne*, No. 06-1436-C, 2008 WL 5205191, at *2 n. 2, *4 (W. Dist. Okla. December 10, 2008), this Court upheld a claim for a non-monetary asset accounting "for the reasons set forth earlier in [that] opinion." That particular determination did not reach the issue of a common law trust responsibility, however.   Also, in *Otoe-Missouria*, the Court recognized that 25 U.S.C. § 4044 requires "a full and complete accounting as possible of the account holder's *funds,*" and that the statute does not otherwise specify an obligation for the management of non-monetary assets.   *Id.*   Because Section 4044 of the Trust Fund Management Reform Act addresses only funds, it does not require Defendants to provide a non-monetary trust asset accounting.    There is no statutory basis for Cherokee's claims regarding such an accounting.   *Shoshone Indian Tribe of Wind River Reservation v. United States*, 364 F.3d 1339, 1350 (Fed. Cir. 2004) ("The Act covers claims concerning 'losses to . . . trust funds' rather than losses to mineral trust *assets*.") (emphasis in original); *see also Flute v.*

*U.S.*, 808 F.3d 1234, 1242-43 (rejecting the plaintiffs' argument that appropriations act riders provided required waiver of sovereign immunity and recognizing that, even if the appropriations riders waived sovereign immunity, "the 2009 Act applies only to claims 'concerning losses to or mismanagement of *trust funds*.'") (citing 2009 Act, 123 Stat. 2904, 2922).  Indeed, Cherokee does not and cannot identify a legal mechanism by which it can obtain an accounting of its non-monetary trust assets.  Accordingly, its claims for such an accounting should be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion and dismiss this case in the entirety.[8]

---

[8]   In the event that this Court determines not to grant Defendants' motion, the Court should require Cherokee, at a minimum, to specify valid specific legal bases, including express waivers of sovereign immunity, for its claims and the Court's jurisdiction.  *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Pueblo of Jemez*, 790 F.3d at 1171.

Respectfully submitted this 7th day of April, 2017,

JEFFREY H. WOOD
Acting Assistant Attorney General

*/s/ Anthony P. Hoang*
DEDRA S. CURTEMAN
IL Bar #6279766
STEPHEN FINN
NY Bar #2574986
ANTHONY P. HOANG
FL Bar #0798193
United States Department of Justice
Environment Division
Natural Resources Section
P.O. Box 7611
Washington, D.C.  20044-7611
Tel: (202) 305-0446
Tel: (202) 305-0484
Tel: (202) 305-0241
Fax: (202) 305-0506
Dedra.Curteman@usdoj.gov
Stephen.Finn@usdoj.gov
Anthony.Hoang@usdoj.gov

Attorneys for Defendants

OF COUNSEL:

KENNETH DALTON
DONDRAE MAIDEN
SHANI WALKER
JOSH EDELSTEIN
Office of the Solicitor
United States Department of the Interior
Washington, D.C.  20240

THOMAS KEARNS
Office of the Chief Counsel
Bureau of the Fiscal Service
United States Department of the Treasury
Washington, D.C.  20227

-37-

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2017, I electronically transmitted the foregoing

document and exhibits to the Clerk of the Court, using the ECF system for filing and

transmittal of a Notice of Electronic Filing to the following ECF registrants:

Courtney R. Jordan
Dallas L. Dale Strimple
Deanna L. Hartley
Jason B. Aamodt
Krystina E. Phillips
Michael T. Hembree
Anne E. Lynch
David F. Askman
Michael M. Frandina
Michael D. Goodstein

*/s/ Anthony P. Hoang*
ANTHONY P. HOANG